PEOPLES BANK OF WAUNETA, APPELLEE, V. NOBLE A. TROWBRIDGE ET AL., APPELLEES: MADESSA M. WOLFE, SPECIAL ADMINISTRATRIX, APPELLANT.

FILED MAY 26, 1932. No. 28259.

*Clyde Anderson* and *Coufal & Shaw*, for appellant.

*F. C. Radke, Barlow Nye, Meeker & Curtis* and *Cordeal, Colfer & Russell*, contra.

Heard before GOSS, C. J., ROSE, DEAN, EBERLY, DAY and PAINE, JJ., and RYAN, District Judge.

DEAN, J.

The Peoples Bank of Wauneta began this action in the district court for Chase county to foreclose a mortgage executed in its favor by Noble A. Trowbridge, on or about April 5, 1921, on the following described real estate, namely, the northeast quarter of section 19 and the northwest quarter of section 20, all in township 7, range 36 west of the 6th principal meridian. Trowbridge executed and de-

livered the above mortgage to the plaintiff bank as security for his promissory note in the principal sum of $2,457.96, and the note, by its terms, became due eight months thereafter.

Madessa M. Wolfe, as special administratrix of the estate of her deceased husband, Thomas Wolfe, filed an answer and cross-petition wherein she admits the execution of the mortgage in suit by Trowbridge in favor of the plaintiff bank. But she alleges that, in July, 1917, Trowbridge executed his promissory note for $3,200 in favor of Thomas Wolfe, with interest thereon at the rate of 8 per cent. per annum, and which became due July 1, 1922, and that, as security for such note, he executed a mortgage on the real estate above described. Trowbridge, on April 5, 1921, and before the $3,200 note to Wolfe became due, executed a second mortgage on the real estate herein in favor of the plaintiff bank. It appears that on or about March 1, 1924, approximately $4,000 was due and unpaid to Wolfe by Trowbridge on the $3,200 note. At that time Wolfe granted an extension to Trowbridge and released the $3,200 mortgage and took instead a mortgage for $4,000 on the real estate herein. The release of the $3,200 mortgage was filed March 11, 1924, that being the same day that the $4,000 mortgage was filed of record. The contention of the plaintiff bank is that the mortgage in suit became a first lien and superior to that of Wolfe's upon the release by him of the 1917 mortgage.

Upon submission the court found and decreed that the $4,000 Wolfe mortgage was a second lien and inferior to the mortgage lien held by the bank, and that Wolfe had knowledge of the mortgage in favor of the bank, but that he failed to have the release of the $3,200 mortgage canceled and he failed to have such mortgage reinstated. From the judgment so rendered Madessa M. Wolfe has appealed.

In respect of the mortgage held by the plaintiff bank, it appears that Trowbridge executed such mortgage as

security for the $2,457.96 note in favor of the bank, and that he signed the note as surety for his brother, the object of the note being to pay off and discharge certain debts owing by the brother to the bank. At the time it was executed, the mortgage to the bank contained the statement that it was "subject to a mortgage of $3,200," this being the 1917 mortgage executed by Trowbridge in favor of Wolfe.

Thomas Wolfe died in February, 1930, and he was then 84 years of age and was then the president of the First National Bank of David City. There is evidence tending to prove that Wolfe was easily prevailed upon to make loans of money that did not inure to his good, nor to that of the bank with which he was associated. And it appears that, shortly before his death, a committee was appointed by the David City bank to oversee all such loans as he may have made. It appears that a witness, who succeeded Wolfe as president of the David City bank, testified that the earliest knowledge he had in respect of the claim of the plaintiff bank was in 1926, when the bank officers informed him that, in their opinion, the mortgage in suit became a first lien against the property herein as soon as Wolfe filed the release of the $3,200 mortgage. And it likewise appears that the officers of the plaintiff bank did not become aware of the execution of the $4,000 mortgage and the release of the $3,200 mortgage, as between Trowbridge and Wolfe, for several months after such release and mortgage had been filed of record.

The evidence of Trowbridge and that of his wife discloses that they recognized the Wolfe mortgage as a first and superior lien on their land, but it appears that they did not inform Wolfe of the mortgage executed by Trowbridge in 1921 in favor of the plaintiff bank. The Trowbridges both testified that it was their intention that the $4,000 note and mortgage were to be a continuation of the $3,200 mortgage executed in 1917, and that it was to be a first lien against their property. And it is apparent from

the evidence that Wolfe believed that he still held a first mortgage lien upon the land in suit at the same time he renewed the loan and accepted the $4,000 mortgage in place of the $3,200 mortgage.

This elementary rule has been stated by a recognized authority: "Entering satisfaction of a mortgage and taking a new one, when designed by the parties to be merely a continuation of the first mortgage, and when the two acts are practically simultaneous or parts of the same transaction, is not an extinguishment of the mortgage, but a renewal thereof, and does not give priority to an intervening judgment or mortgage creditor of the mortgagor, especially where it is done in good faith, in ignorance of the existence of the intervening lien, and without any intention to release the lien of the mortgage." 27 Cyc. 1222.

And in 2 Jones, Mortgages (7th ed.) sec. 873, the statement is made that "It is presumed, as matter of law, that the party must have intended to keep on foot his mortgage title, when it was essential to his security against an intervening title, or for other purposes of security." In *Edney v. Jensen*, 116 Neb. 242, following the rule above announced, we held: "Ordinarily, it is presumed that one must have intended to keep alive his mortgage title, where it was essential to his security against an intervening title; and this presumption applies although the party through ignorance of such intervening title may have actually discharged the mortgage and canceled the notes and really intended to extinguish them."

In *American Savings Bank & Trust Co. v. Helgesen*, 67 Wash. 572, where an old mortgage was released and the mortgagee took a new mortgage in its place to secure the same debt, the court held: "The cancelation of the old mortgage and the substitution of the new were contemporaneous acts. The manifest intention of all parties interested and participating was not to discharge the lien of the mortgage but to continue it. The purpose was not to create a new incumbrance, but merely to change the form

of the old. A court of equity will look straight to the substance of the transaction, rather than give heed to the mere form which it may assume."

The evidence appears to disclose that Wolfe had no actual knowledge of the existence of the mortgage in favor of the plaintiff bank at the time he released the $3,200 mortgage and accepted the $4,000 mortgage in lieu thereof, and the presumption is that he would not have done so had he known of the mortgage in suit. But where the release of the former mortgage was filed on the same day as the subsequent mortgage on the same land, and the mortgagee was at all times unaware of the existence of an intervening second mortgage thereon, such second mortgage will not be given priority over the new mortgage, where it appears that it was the intention of the parties thereto that such new mortgage was not a discharge of the former mortgage lien but a continuation thereof.

The argument of the plaintiff bank is that Mrs. Wolfe is estopped to recover on the mortgage for $4,000, and that she is guilty of laches in failing to foreclose thereon long before she filed her cross-petition herein. And the bank argues that it would long ago have begun its suit had it been informed that Mrs. Wolfe maintained that her $4,000 mortgage was superior to the bank's mortgage. However, we do not think there is merit in this contention in view of the fact that we hold that the $4,000 mortgage is a continuation of the former $3,200 mortgage and that the plaintiff bank's mortgage is inferior thereto. And, besides, the bank failed to bring any action to recover on the mortgage in suit until after the death of Thomas Wolfe in 1930, and the defense of laches cannot be invoked in its favor.

In view of the record before us the judgment must be and it hereby is reversed, with directions that the mortgage executed by Trowbridge in favor of Wolfe be reinstated as a first lien against the property in suit.

REVERSED.