UNION LOAN & SAVINGS ASSOCIATION, APPELLEE, v. ROBERT G. SIMMONS, APPELLANT.

FILED JUNE 12, 1936. No. 29694.

*Robert G. Simmons, pro se.*

*Floyd E. Wright, contra.*

Heard before GOSS, C. J., GOOD, DAY, PAINE and CARTER, JJ., and KROGER, District Judge.

CARTER, J.

This is an action in which plaintiff prays that a mortgage given as a renewal of a first mortgage on certain real estate in Scotts Bluff county be declared prior to the lien of an intervening mortgage. From a decree granting the relief prayed for, the defendant, Robert G. Simmons, appeals.

It appears from the record that on November 22, 1922, the defendant, Robert G. Simmons, and his wife were the owners of certain real estate, and that on said date they executed a real estate mortgage thereon to the plaintiff, which was placed of record. On November 13, 1928, Robert G. Simmons and wife conveyed the premises to Otis W. Simmons who assumed and agreed to pay the mortgage given to plaintiff. On October 20, 1931, Otis W. Simmons and wife executed and delivered a mortgage to Robert G. Simmons in the amount of $1,000, which was recorded on October 24, 1931. On August 20, 1932, default having been made under the first mortgage, Otis W. Simmons and wife executed a new mortgage to the plaintiff in the amount of $1,550, the same representing $1,299.56 due upon the old mortgage, $175.59 paid for taxes due on the premises, $35.30 for expenses in refinancing, and the sum of $39.55 which was credited on the note. Prior to the completion of the loan, plaintiff caused the abstract of title to be extended by an abstracter, who overlooked the mortgage of $1,000 given to the defendant, Robert G. Simmons. It appearing to the plaintiff, because of the

mistake of the abstracter, that there were no intervening liens, it released its prior mortgage and recorded the renewal mortgage. Upon discovery of the $1,000 intervening mortgage, and the refusal of the defendant, Robert G. Simmons, to acknowledge the priority of the renewal mortgage, this action was commenced to have the $1,550 renewal mortgage declared a prior lien to the $1,000 mortgage of the defendant, Robert G. Simmons.

The trial court found that the $1,550 renewal mortgage was a first lien on the premises except for the item of $35.30 contained therein.

The appellant first contends that appellee is not entitled to relief in a court of equity under the facts shown in the record. To this we are unable to agree. In the case of *Peoples Bank v. Trowbridge,* 123 Neb. 312, 242 N. W. 647, this court said: "Where the release of a former mortgage on certain land was filed on the same day as a subsequent mortgage thereon, and the mortgagee at all times was unaware of the existence of an intervening second mortgage, such second mortgage will not be given priority over the subsequent new mortgage, where it appears that it was the intention of the parties thereto that such new mortgage was not a discharge of the former mortgage lien but a continuation thereof."

We fail to find any evidence in the record indicating that appellant has been injured by the transaction. The amount of the renewal mortgage was a lien prior to that of appellant before the first mortgage was released. Appellant was a signer of the first mortgage and was personally liable on the debt. After the renewal mortgage was executed and delivered and the release of the first mortgage filed, appellant was relieved of this personal liability. Appellant had actual knowledge of the existence of the first mortgage at all times for the reason that his second mortgage contained a provision that it was subject to a mortgage to the Union Loan & Savings Association. We are convinced that where, as in this case, an existing lien has been discharged and released by the holder, and

a renewal taken without knowledge of the existence of an intervening lien against the property, the mortgagee will be regarded as acting under such a mistake of fact as to entitle him to relief by a restoration of his priority if the rights of innocent parties are not involved.

In the case of *Holt v. Mitchell,* 96 Colo. 412, 43 Pac. (2d) 388, 98 A. L. R. 838, the court said: "The fact involved, is the existence of the Rhodes trust deed at the time of the release of the first trust deed. The mistake is the assumption of the nonexistence of the instrument when in fact it did exist. The mistake does not depend on the degree of care used to ascertain the existence of the second mortgage, but on the state of mind of the plaintiff with respect to its existence. If he had a *bona fide* belief that it did not exist, so far as he was concerned such a belief was a mistake of fact. If he acted in reliance on such belief and changed his status with reference to the land covered by the trust deed to his own injury, then as between himself and the owner of the land and third persons who were not injured he is entitled to have his status with reference to the land restored by equity. Those who are not injured, as was well stated by the court in *McKenzie v. McKenzie,* 52 Vt. 271, should not be permitted to 'speculate in another's blunders.'"

Appellant contends that appellee failed to exercise due care in discharging the first mortgage, and as a result is not entitled to equitable relief. The case of *Institute Building & Loan Ass'n v. Edwards,* 81 N. J. Eq. 359, 86 Atl. 962, is in point, and in that case the court said: "And it may, I think, be appropriately added that the chief aim and purpose of our recording statutes is the protection from loss of innocent purchasers and encumbrancers who have changed their position to their detriment without notice, actual or constructive, of prior liens or conveyances. I am convinced that in a case of this nature where no one has been injured by the mistake but the party complainant and no one has changed his position by reason of the act which has been performed in consequence of the mistake,

relief cannot be properly denied upon the theory that a high degree of vigilance has not been exercised by complainant. The negligence of complainant in failing to procure proper searches should, I think, be thus considered with reference to its effects on the rights of others, and so considered cannot be properly regarded as that type of culpable negligence which appropriately affords a bar to equitable relief."

In *Seeley v. Bacon*, 34 Atl. (N. J. Ch.) 139, a case in which an inadequate investigation of the records was involved, the court said: "If these complainants had canceled these mortgages with full knowledge of all the facts, they would admittedly have no standing as suitors asking for such a decree. If, however, they did it through a misunderstanding of a fact, then the question is presented, was it such a mistake as, under the circumstances, a court of equity should rectify? Now, that the cancelation occurred by reason of a mistake of facts is undisputed. It is entirely clear that the supposition that no subsequent encumbrances existed upon the mortgaged property was the inducing cause to such action. Now, as a rule, equity will refuse to rectify a mistake which occurred through the unexcusable negligence of the party who asks to be relieved from the effect of the mistake. * * * But what degree of vigilance is to be exercised must depend upon the facts of each case. Where the act done by mistake is one calculated to induce others to take a line of conduct which will put them to loss if the mistake is corrected, it ought to be clear that the party asking for relief has been led into the mistake in spite of the employment of the highest degree of vigilance. Where, however, no one is injured by the mistake but the party himself, and no one has changed his position by reason of the act executed through the influence of the alleged mistake, I see no reason why the mistake should not be corrected, although the highest degree of vigilance has not been exercised. For instance, if the mortgage held by Mr. Bacon had been taken for money advanced by him at the time, and had been taken after the

cancelation of the old mortgages, and before the record showed the existence of the new mortgage, a case would have been presented requiring the strongest evidence of unpreventable mistake to justify the reinstatement of these mortgages. But, as has already been observed, the facts in respect to the mortgage held by Mr. Bacon are entirely different. He advanced nothing at the time his mortgage was accepted, and the old mortgages were still a subsisting lien at that time. So it is perceived that the security of his mortgage, after the restoration of the two old mortgages, is exactly the same as it was before the cancelation. No valuable consideration was advanced by Bacon at the time of the execution of the mortgage to him on the faith of the supposed nonexistence of the two old mortgages, arising from their cancelation of record. By the decree asked for, the parties will be placed in *statu quo*."

Appellant further contends that appellee has an adequate remedy at law by maintaining an action for damages against the abstracter and his bondsman. It must be borne in mind that, under the authorities herein cited, appellee has a first lien on the real estate in question. The mistake of the abstracter brought about a situation on the public records that clouded the certainty of appellee's priority. This uncertainty appellee asks a court of equity to remove. An action for damages would provide no remedy at all. The position taken by appellant would require appellee to surrender its first lien and accept in lieu thereof a cause of action for damages. This contention is without merit. Clearly the appellee has no adequate remedy at law to have the priority of its mortgage lien determined and is entitled to invoke the powers of a court of equity to obtain relief.

Appellant also complains because appellee did not rescind its contract *in toto*. The fact of the matter is that appellee did not rescind at all, nor is it required to do so. Appellee does not seek to rescind the renewal mortgage. It retains the new mortgage and asks to have its first lien confirmed by the court. This it has a right to do when the holder of the intervening mortgage has suffered no damage

and where the rights of innocent parties are not involved. The trial court very properly granted the prayer of appellee's petition.

AFFIRMED.